# EXHIBIT "A"

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| RAJESH PATEL, Individually and on Behalf of All Others Similarly Situated,   ) <br>   ) <br>   ) <br>  Plaintiff,   ) <br>   ) <br> vs.   ) <br>   ) <br> VIATRIS, INC., PFIZER INC., MICHAEL   ) <br> GOETTLER, SANJEEV NARULA, BRYAN   ) <br> SUPRAN, MARGARET M. MADDEN,   ) <br> DOUGLAS E. GIORDANO, ROBERT J.   ) <br> COURY, IAN READ, and JAMES KILTS,   ) <br>   ) <br>  Defendants.   ) <br>   ) | **CIVIL DIVISION** <br><br> **ELECTRONICALLY FILED** <br><br> **Case No.:** <br><br> **CLASS ACTION COMPLAINT** |

Filed on Behalf of Plaintiff Rajesh Patel

Counsel of Record for This Party:

Jonathan M. Zimmerman
Pa. ID. No. 322668

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:    (212) 233-6444
Fax No.:    (212) 233-6334
Email:    jzimmerman@scott-scott.com

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

|  |  |
|---|---|
| RAJESH PATEL, Individually and on Behalf of All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>      vs.<br><br>VIATRIS, INC., PFIZER INC., MICHAEL GOETTLER, SANJEEV NARULA, BRYAN SUPRAN, MARGARET M. MADDEN, DOUGLAS E. GIORDANO, ROBERT J. COURY, IAN READ, and JAMES KILTS,<br><br>                 Defendants. | **CIVIL DIVISION – CLASS ACTION** |

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
The Allegheny County Bar Association
11th Floor Koppers Bldg.
436 Seventh Avenue,
Pittsburgh, PA 15219
TELEPHONE: 412-261-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA**

| | |
|---|---|
| RAJESH PATEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VIATRIS, INC., PFIZER INC., MICHAEL GOETTLER, SANJEEV NARULA, BRYAN SUPRAN, MARGARET M. MADDEN, DOUGLAS E. GIORDANO, ROBERT J. COURY, IAN READ, and JAMES KILTS,<br><br>Defendants. | **CIVIL DIVISION**<br><br>**ELECTRONICALLY FILED**<br><br>**Case No.**<br><br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

1.      Plaintiff Rajesh Patel ("Plaintiff" or "Patel"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by the Viatris, Inc. ("Viatris" or the "Company"), Upjohn Inc. ("Upjohn"), Pfizer Inc. ("Pfizer"), and Mylan N.V. ("Mylan"), as well as media and analyst reports about the Company and Company press releases.   Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

## SUMMARY OF THE ACTION

2.      Plaintiff brings this securities class action on behalf of former Mylan shareholders who acquired Viatris common stock shares pursuant to the S-4 registration statement and related 424B3 prospectus (collectively, the "Registration Statement") issued in connection with a November 2020 transaction by which Pfizer's subsidiary Upjohn was spun-off and merged with Mylan (the "Merger"), to form the company now known as Viatris.

3. The action asserts non-fraud, strict liability claims under §§11, 12(a)(2), and 15 of the Securities Act of 1933 ("1933 Act" or "Securities Act"), against Viatris, Pfizer, and certain Viatris, Pfizer, and Mylan officers and directors.

4. Viatris is a pharmaceutical company headquartered in Pennsylvania. By means of the Merger, Viatris was created through the combination of Pfizer's spun-off Upjohn business and Mylan. Viatris's common stock trades on the NASDAQ exchange under the ticker "VTRS."

5. Pfizer is a pharmaceutical company headquartered in New York. In connection with the Merger, Pfizer spun off its Upjohn business segment into a separate, wholly owned subsidiary, and issued and distributed all outstanding common stock of Upjohn's common stock directly to Pfizer shareholders of record on a pro rata basis.

6. Mylan was a pharmaceutical company headquartered in the United Kingdom. Before the Merger, Mylan's common shares traded on the NASDAQ exchange under the ticker symbol "MYL." By means of the Merger, Mylan was merged with Pfizer's Upjohn business to create the company now known as Viatris.

7. In November 2020, in connection with the Merger, Viatris (then known as Upjohn) issued approximately 560 million new shares of VTRS common stock to former Mylan shareholders in exchange for their Mylan shares. Each of these new shares of VTRS common stock was issued, solicited, and sold pursuant to the Registration Statement, at a market price of approximately $16.30 per share.

8. The Registration Statement contained untrue statements of material fact and omitted to state material facts both required by governing regulations and necessary to make the statements made not misleading.

9. The Registration Statement overstated Viatris's financial condition, ability to pay dividends, and dividend payout policy. For example, the Registration Statement touted that, at the time of the Merger, Viatris "currently anticipated that [it] *will **initiate a dividend of approximately 25% of free cash flow*** beginning the first full quarter following the

consummation of the transactions." On the approximately $4 billion in annual free cash flow reflected in the Registration Statement, that indicated a $1 billion dividend yielding approximately 5% on the current share price. In truth, Viatris was already internally projecting lowered revenue while at the same time planning to redirect more free cash to paying down debt, such that Viatris was already internally projecting a dividend less than half than touted in the Registration Statement.

10. The Registration Statement also failed to disclose the increasing severity and negative internal impact Viatris was already suffering in China, a purported growth market, from the Chinese government's mandated price cuts under a national policy of volume-based procurements. For example, the Registration Statement stated that "*If* the Upjohn Business's bids fail to win in [Chinese] centralized procurement projects or if prices [in China] are significantly cut, the market share, revenue and profitability of the products concerned could be adversely affected. . . . Any of *these developments could have a material adverse effect* on the Upjohn Business, its financial position and its results of operations." In truth, at the time of the Merger, prices in China had already been severely cut and the Upjohn business had already failed to such a degree that it had already had material adverse effects on Viatris's business, financial position, and results of operations. These already severely negative effects were continuing to escalate at the time of the Merger.

11. The Registration Statement also failed to disclose the severe and negative impact Viatris was already suffering due to generic competitors to Lyrica in Japan. At the time of the Merger, Defendants represented that Viatris still expected a delayed loss of exclusivity ("LOE") and thus a longer period of patent monopoly in Japan. For example, the Registration Statement represented that "*Lyrica . . . in Japan . . .* [had not] *lost exclusivity*" and would not for a "number of years," such that Viatris would not "*lose market exclusivity . . . [for] Lyrica in Japan . . . before December 2022*." While the Registration Statement acknowledged that Viatris's Lyrica patent in Japan was then "the subject of an invalidity proceeding before the Japanese Patent Office (the "JPO")," the Registration Statement misrepresented that only "*if* the action is

determined adversely to the Upjohn Business, it could result in revenue from Lyrica sales in Japan experiencing a significant decrease earlier than December 2022." In truth, at the time of the Merger, Japan was already actively allowing Viatris's generic competitors to enter the market, those generic competitors were already stealing market share from Viatris, and as a result Viatris was already experiencing a significant decrease in revenue from Lyrica sales in Japan.

12.     Defendants were required to disclose this material information in the Registration Statement for at least three independent reasons. First, SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303"), requires disclosure of any known events, trends, or uncertainties that at the time of the IPO had caused or were reasonably likely to cause Viatris's disclosed financial information not to be indicative of future operating results. At the time of the Merger, Viatris already lacked the ability to initiate its touted dividend, was already suffering increasingly severe negative impacts from China's national policy of volume-based procurements, and had already effectively lost exclusivity for Lyrica in Japan. These undisclosed materially negative events and trends were likely to (and in fact did) materially and adversely affect Viatris's results and prospects and rendered the disclosed results and trends in the Registration Statement misleading and not indicative of Viatris's future operating results.

13.     Second, SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), requires, in the "Risk Factor" section of the Registration Statement, a discussion of the most significant factors that make the offering risky or speculative and that each risk factor adequately describe the risk. Viatris's risk factors did not even mention, much less adequately describe, the risk posed by Viatris's inability to initiate its touted dividend. Nor did Viatris's risk factors adequately describe the already severe negative impact Viatris was suffering due to China's national policy of volume-based procurements, the already severe negative impact Viatris was suffering from the loss of Lyrica exclusivity in Japan and increasing entrance of generic competitors, or the other already occurring negative results and trends, nor the likely and consequent materially adverse effects on the Company's future results, share price, and prospects.

14.     Third, Defendants' failure to disclose Viatris's inability to effect its touted 5% dividend yield, the already severe negative impact Viatris was suffering as due to China's national policy of volume-based procurements, the already severely negative impact Viatris was suffering from the loss of Lyrica exclusivity in Japan and increasing entrance of generic competitors, much less the likely and consequent materially adverse effects on the Company's future results, share price, and prospects, rendered false and misleading the Registration Statement's many references to known risks that "*if*" occurring "*might*" or "*could*" affect the Company. These "risks" were already materializing at the time of the Merger.

15.     Defendants completed the Merger with the foregoing misrepresentations and omissions in the Registration Statement. And with these material misrepresentations and omissions, the Merger was extremely lucrative for Defendants.

16.     But as the truth of Defendants' misrepresentations and omissions emerged, the price of Viatris shares suffered sharp declines. By the commencement of this action, Viatris shares traded as low as $12.97 per share, amounting to an *over $1 billion decline* from the offering price.

## JURISDICTION AND VENUE

17.     This Court has original subject matter jurisdiction under the Pennsylvania Constitution. Removal is barred by §22 of the Securities Act.

18.     This Court has personal jurisdiction and venue is proper because certain of the Defendants reside in this county and all Defendants and their agents affirmatively solicited and sold the subject securities and Registration Statement to Plaintiff and other investors in Pennsylvania and this county, and those contacts have a substantial connection to the claims alleged herein.

## PARTIES

19.     Plaintiff Patel acquired newly issued VTRS shares directly from Viatris in exchange for Mylan shares pursuant to the Merger and was damaged thereby.

20.     Defendant Viatris is a pharmaceutical company headquartered in Pennsylvania. By means of the Merger, Viatris was created through the combination of Pfizer's spun-off Upjohn business and Mylan. Viatris's common stock trades on the NASDAQ exchange under the ticker "VTRS."

21.     Defendant Pfizer is a pharmaceutical company headquartered in New York. In connection with the Merger, Pfizer spun off its Upjohn business segment into a separate, wholly owned subsidiary, Upjohn, and issued and distributed all outstanding common stock of Upjohn common stock directly to Pfizer shareholders of record on a pro rata basis. Pfizer exercised its control over Viatris and the Merger by designating Pfizer employee representatives as officers and directors of Viatris who, within the scope of their employment or agency on behalf of Pfizer, reviewed, contributed to, signed, or agreed to be named as incoming officer and director designees in the Registration Statement.

22.     Defendant Michael Goettler ("Goettler") was, at all relevant times, Viatris's President and Chief Executive Officer. Ahead of the Merger, Defendant Goettler was an employee representative of Pfizer, installed by Pfizer as the Global President of Pfizer's Upjohn business. In his capacity as an employee-agent representative of Pfizer, Defendant Goettler reviewed, contributed to, and signed the Registration Statement.

23.     Defendant Sanjeev Narula ("Narula") was, at all relevant times, Viatris's Chief Financial Officer, Controller, Treasurer, and Principal Financial and Accounting Officer. Defendant Narula reviewed, contributed to, and signed the Registration Statement.

24.     Defendant Bryan Supran ("Supran") was, at all relevant times, a Director on Viatris's Board of Directors. Defendant Supran reviewed, contributed to, and signed the Registration Statement.

25.     Defendant Margaret M. Madden ("Madden") was, at all relevant times, a Director on Viatris's Board of Directors. Defendant Madden reviewed, contributed to, and signed the Registration Statement.

26.     Defendant Douglas E. Giordano ("Giordano") was, at all relevant times, a Director on Viatris's Board of Directors. Defendant Giordano reviewed, contributed to, and signed the Registration Statement.

27.     Defendant Robert J. Coury ("Coury") was the Chairman of the Mylan Board and was named in the Registration Statement as an incoming Director and Executive Chairman of the Viatris Board of Directors. In his capacity as an employee-agent representative of Mylan, Defendant Coury reviewed, contributed to, and signed the Registration Statement.

28.     Defendant Ian Read ("Read") was named in the Registration Statement as an incoming Director on Viatris's Board of Directors. Defendant Read is a long-tenured Pfizer executive, having spent over 40 years in various roles all the way up to Pfizer CEO. In his capacity as an employee-agent representative of Pfizer, Defendant Read was designated by Pfizer and named in the Registration Statement as an incoming Director on Viatris's Board of Directors.

29.     Defendant James Kilts ("Kilts") was a longtime director of Pfizer and was named in the Registration Statement as an incoming Director on Viatris's Board of Directors. In his capacity as an agent representative of Pfizer, Defendant Kilts was designated by Pfizer and named in the Registration Statement as an incoming Director on Viatris's Board of Directors.

30.     The Defendants named in ¶¶22-29 are referred to herein as the "Individual Defendants." The Individual Defendants each signed or were named as incoming directors in Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, planned and contributed to the Merger and the Registration Statement, and attended road shows and other promotions to meet with and present favorable information to Mylan shareholders and other potential Viatris investors, all motivated by their own and the Company's financial interests.

## DEFENDANTS' FALSE AND MISLEADING
## REGISTRATION STATEMENT AND PROSPECTUS

31.     On October 25, 2019, Defendants filed with the SEC a draft registration statement on Form S-4, which, incorporating and in combination with related documents including a prospectus pursuant to Rule 424(b)(3), would be used to register the new Viatris shares to be issued and exchanged for Mylan shares in the Merger following a series of amendments in response to SEC comments, including comments from the SEC emphasizing the importance of adequately disclosing material events, trends, and uncertainties and risk factors, as required by Items 303 and 105.

32.     On February 6, 2020, Defendants filed the final amendment to the Registration Statement, which registered approximately 560 million Viatris common stock shares for exchange in the Merger. The SEC initially declared the Registration Statement effective on February 13, 2020. That same day, Defendants filed with the SEC the 424B3 Prospectus for the Merger, which forms part of the Registration Statement.

33.     On November 16, 2020, Defendants consummated the Merger, issuing approximately 560 million new shares of VTRS common stock (plus cash consideration) to former Mylan shareholders in exchange for their Mylan shares. Each of these new shares of VTRS common stock was issued, solicited, and sold pursuant to the Registration Statement on November 16, 2020, at a uniform market price of approximately $16.30 per share.

34.     The Registration Statement contained untrue statements of material fact and omitted to state material facts both required by governing regulations and necessary to make the statements made not misleading.

35.     Among other things, the Registration Statement overstated Viatris's financial condition, ability to pay dividends, and dividend payout policy. For example, the Registration Statement touted that, at the time of the Merger, Viatris "currently anticipated that [it] ***will initiate a dividend of approximately 25% of free cash flow*** beginning the first full quarter following the consummation of the transactions." On approximately $4 billion in annual free

cash flow reflected in the Registration Statement, that indicated an approximately $1 billion dividend yielding approximately 5% on the current share price. In truth, Viatris was already internally projecting lowered revenue while at the same time already planning to redirect more free cash to paying down debt, such that Viatris was already internally projecting a far lower dividend than touted in the Registration Statement.

36.     The Registration Statement also failed to disclose the already increasing severity and negative internal impact Viatris was already suffering in China, a purported growth market, from the Chinese government's mandated price cuts under a national policy of volume-based procurements. For example, the Registration Statement stated that "*If* the Upjohn Business's bids fail to win in [Chinese] centralized procurement projects or if prices [in China] are significantly cut, the market share, revenue and profitability of the products concerned could be adversely affected. . . . Any of *these developments could have a material adverse effect* on the Upjohn Business, its financial position and its results of operations." In truth, at the time of the Merger, prices in China had already been severely cut and the Upjohn business had already failed to such a degree that it had already had material adverse effects on Viatris's business, financial position, and result of operations. Moreover, these already severely negative effects were continuing to escalate at the time of the Merger.

37.     The Registration Statement also failed to disclose the severe and negative impact Viatris was already suffering due to generic competitors to Lyrica in Japan. At the time of the Merger, Defendants represented that Viatris still expected a delayed LOE and thus a longer period of patent monopoly in Japan. For example, the Registration Statement that "*Lyrica . . . in Japan . . .* [had not] *lost exclusivity*" and would not for a "number of years," such that Viatris would not "*lose market exclusivity . . . [for] Lyrica in Japan . . . before December 2022*." And while the Registration Statement acknowledged that Viatris's Lyrica patent in Japan was then "the subject of an invalidity proceeding before the Japanese Patent Office (the "JPO")," the Registration Statement misrepresented that only "*if* the action is determined adversely to the Upjohn Business, [] *could* result in revenue from Lyrica sales in Japan experiencing a

significant decrease earlier than December 2022." In truth, at the time of the Merger, Japan was already actively allowing Viatris's generic competitors to enter the market, those generic competitors were already stealing market share from Viatris, and as a result Viatris was already experiencing a significant decrease in revenue from Lyrica sales in Japan. In effect, by the time of the Merger, Viatris had already lost exclusivity in Japan.

38. Defendants were required to disclose this material information in the Registration Statement for at least three independent reasons. First, SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303"), requires disclosure of any known events, trends, or uncertainties that at the time of the IPO had caused or were reasonably likely to cause Viatris's disclosed financial information not to be indicative of future operating results. At the time of the Merger, Viatris already lacked the ability to initiate its touted dividend, was already suffering increasingly severe negative impacts from China's national policy of volume-based procurements and had already effectively lost exclusivity for Lyrica in Japan. These undisclosed materially negative events and trends were likely to (and in fact did) materially and adversely affect Viatris's results and prospects and rendered the disclosed results and trends in the Registration Statement misleading and not indicative of Viatris's future operating results.

39. Second, SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), requires in the "Risk Factor" section of the Registration Statement, a discussion of the most significant factors that make the offering risky or speculative and that each risk factor adequately describe the risk. Viatris's discussions of risk factors did not even mention, much less adequately describe the risk posed by, Viatris's inability to initiate its touted dividend, the already severe negative impact Viatris was suffering as due to China's national policy of volume-based procurements, the already severe negative impact Viatris was suffering from the loss of Lyrica exclusivity in Japan and increasing entrance of generic competitors, nor the other already occurring negative results and trends, nor the likely and consequent materially adverse effects on the Company's future results, share price, and prospects.

40.     Third, Defendants' failure to disclose Viatris's inability to initiate (much less sustain) its touted $1 billion dividend, the already severe negative impact Viatris was suffering as due to China's national policy of volume-based procurements, the already severely negative impact Viatris was suffering from the loss of Lyrica exclusivity in Japan and increasing entrance of generic competitors, much less the likely and consequent materially adverse effects on the Company's future results, share price, and prospects, rendered false and misleading the Registration Statement's many references to known risks that "*if*" occurring "*might*" or "*could*" affect the Company. These "risks" were already materializing at the time of the Merger.

41.     Defendants completed the Merger with the foregoing misrepresentations and omissions in the Registration Statement. And with these material misrepresentations and omissions in the Registration Statement, the Merger was extremely lucrative for Defendants.

42.     But as the truth of Defendants' misrepresentations and omissions gradually became known, the price of Viatris shares suffered sharp declines.

43.     For example, on February 22, 2021, Viatris announced disappointing fiscal results and guidance, including a far lower projected dividend of approximately $540 million (approximately half than that touted in the Registration Statement) and revenue down to between $17.2 billion and $17.8 billion, a substantial miss well below the $18.46 billion consensus, admittedly negatively impacted by pressure from both volume-based procurements in China and generic competitors to Lyrica in Japan. In response, many research analysts expressed dire concern. According to Cowen analysts, Viatris's business model looked "*broken*," for it now appeared that "the Upjohn business w[ould] likely compound [Mylan's problems]" and that Viatris's 2021 guidance "was *significantly below their original expectations*" "highlight[ed] the rapid and difficult *underlying deterioration* in both [the Mylan and Upjohn] businesses."

44.     On this news, Viatris's shares immediately fell from $18.21 per share on February 19, 2021 to close at $15.50 on February 22, 2021, an immediate 15% decline. Over the following weeks, Viatris continued to decline and investors suffered severe losses.

45.     By the commencement of this action, Viatris's shares traded as low as $12.97 per share, amounting to an ***over $1 billion decline*** from the time of Merger.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action on behalf of all former Mylan shareholders who received Viatris common stock in exchange for Mylan shares pursuant to the Merger (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Viatris and Mylan or their transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated the Securities Act;

(b)     whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and

12

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION

### For Violation of §11 of the Securities Act
### Against All Defendants

52.     Plaintiff incorporates all the foregoing by reference.

53.     This Cause of Action is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

54.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

55.     Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

56.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

57.     By reason of the conduct herein alleged, each Defendant violated, or controlled an employee, agent, or other person acting on their behalf who violated, §11 of the Securities Act.

58.     Plaintiff acquired Viatris common stock in exchange for Mylan shares in the Merger pursuant to the Registration Statement.

59.     Plaintiff and the Class have sustained damages.  The value of Viatris shares has declined substantially subsequent to and due to Defendants' violations.

60.     At the time of their purchases of Viatris shares as alleged herein, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff commenced this action.  Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff commenced this action.

## SECOND CAUSE OF ACTION

### For Violation of §12(a)(2) of the Securities Act
### Against All Defendants

61.     Plaintiff incorporates all the foregoing by reference.

62.     By means of the defective Prospectus, each of the Defendants, or their employees, agents, or other representatives on their behalf, promoted, solicited, and sold Viatris shares directly to Plaintiff and other members of the Class.

63.     The Prospectus for the Merger contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants owed Plaintiff and the other members of the Class who purchased Viatris shares in the Merger pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

64.     Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the prospectus at the time Plaintiff acquired Viatris shares in the Merger.

65.     By reason of the conduct alleged herein, Defendants and/or their employees, agents, or other representatives, violated §12(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Viatris shares in the Merger via the November 2020 stock-for-stock exchange pursuant to the Prospectus sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold the Viatris shares issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby constructively tender their Viatris shares to Defendants sued herein. Class members who have sold their Viatris shares seek damages to the extent permitted by law. Plaintiff and the other putative class members are also entitled to an accounting and disgorgement of Defendants' unjust profits.

### THIRD CAUSE OF ACTION

#### For Violation of §15 of the Securities Act
#### Against All Defendants

66.     Plaintiff incorporates all the foregoing by reference.

67.     This Cause of Action is brought pursuant to §15 of the Securities Act against all Defendants.

68.     The Individual Defendants were controlling persons of Viatris and Pfizer by virtue of their positions as senior directors or officers of Viatris, Pfizer, Upjohn, and Mylan. The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of Viatris, Pfizer, Upjohn, and Mylan. By means of its majority holdings, board designees, and other direct and indirect contractual, business, and corporate and business relationships, Pfizer controlled Viatris and each Pfizer employee and other representative named as an Individual Defendant. Viatris,

Pfizer, and the Individual Defendants were each a culpable participant in the violations of §§ 11 and 12(a)(2) of the Securities Act alleged in the First and Second Causes of Action above, based on their having signed or authorized the signing of the Registration Statement, having been named as incoming directors in, or having designated employees or other representative agents to sign or be named as incoming directors in the Registration Statement, and having otherwise participated in the process which allowed the Merger stock-for-stock exchange to be successfully completed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Certifying this class action, appointing Plaintiff as a Class representative, and appointing Plaintiff's counsel Scott +Scott Attorneys at Law LLP and Hedin Hall LLP as Co-Class Counsel on behalf of the Class;

B.      Awarding damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission, an accounting, disgorgement, and such other equitable or injunctive relief as deemed appropriate by the Court.

**JURY DEMAND**

Plaintiff demands trial by jury.

DATED:  October 28, 2021          **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                  */s/ Jonathan M. Zimmerman*
                                  THOMAS L. LAUGHLIN, IV
                                  JONATHAN M. ZIMMERMAN (Pa. ID. No. 322668)
                                  The Helmsley Building
                                  230 Park Avenue, 17th Floor
                                  New York, NY 10169
                                  Telephone: 212/233-6444
                                  212/233-6334 (fax)
                                  tlaughlin@scott-scott.com
                                  jzimmerman@scott-scott.com

HEDIN HALL LLP
DAVID W. HALL
ARMEN ZOHRABIAN
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
Telephone: 415/766-3534
415/402-0058 (fax)
dhall@hedinhall.com
azohrabian@hedinhall.com

*Co-Lead Counsel for Plaintiff and Putative Class*

THE SCHALL LAW FIRM
Brian J. Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile: 310-388-0192
brian@schallfirm.com Attorneys for Plaintiff

*Additional Counsel for Plaintiff*

## VERIFICATION

I, Jonathan M. Zimmerman, of Scott+Scott Attorneys at Law LLP, hereby certify that the facts set forth in the within Complaint in Civil Action are true and correct to the best of my knowledge, or information and belief, and that this statement is made subject to the penalties of 18 Pa C.S.A. §4904, relating to unsworn falsification to authorities.

Respectfully submitted,

DATED:  October 28, 2021

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/ Jonathan M. Zimmerman*
Thomas L. Laughlin, IV
Jonathan Zimmerman (Pa. ID. No. 322668)

Scott+Scott Attorneys at Law LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169

*Counsel for Plaintiff*